```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
TREELINE 990 STEWART PARTNERS LLC,

                Plaintiff,              MEMORANDUM & ORDER
                                        10-CV-5234 (JS)(ETB)
        -against-

RAIT ATRIA, LLC, RAIT PARTNERSHIP
L.P., RAIT GENERAL, INC. and
990 STEWART AVENUE INVESTORS LLC,

                Defendants.
----------------------------------X
```
APPEARANCES:
For Plaintiff:      Richard C. Schoenstein, Esq.
                    Robert C. Carillo, Esq.
                    Satterlee Stephens Burke & Burke LLP
                    230 Park Avenue
                    New York, NY 10169

For Defendants:     Dana B. Klinges, Esq.
                    Duane Morris LLP
                    30 South 17th Street
                    Philadelphia, PA 19103-4196

                    Suzan Jo, Esq.
                    Duane Morris LLP
                    1540 Broadway
                    New York, NY 10036-4086

                    Myles A. Seidenfrau, Esq.
                    Duane Morris LLP
                    1940 Route 70 East
                    Cherry Hill, NJ 08003

SEYBERT, DISTRICT JUDGE:

Pending before the Court is the RAIT Defendants' motion to drop Defendant 990 Stewart Avenue Investors ("990 SAI") as a party, and dismiss the Amended Complaint. For the following

reasons, the Court DENIES the motion to drop 990 SAI as a party. Thus, it does not reach the RAIT Defendants' motion to dismiss. Instead, it sua sponte remands this case to the New York Supreme Court, County of Nassau, because it lacks diversity jurisdiction.

BACKGROUND[1]

This is a contractual dispute. In 2006, the RAIT Defendants loaned $7.75 million to Plaintiff Treeline 990 Stewart Partners LLC ("Treeline"). (Am. Compl. ¶ 16). In return, the RAIT Defendants received a "preferred equity" position in 990 SAI, a limited liability company that the parties formed to effectuate the transaction. (Id.). This preferred equity position, among other things, entitles the RAIT Defendants to receive interest payments from the rent and other operating income that 990 SAI earns, through its indirect ownership and management of an office building in Garden City, New York. (Id.).

Not long after the loan transaction, relevant economic conditions changed substantially, resulting in "an erosion of tenants and a significant disruption of rental revenues." (Id. at ¶ 19.) So, roughly a year ago, the parties began discussing a

---

[1] The Court does not reach the Fed. R. Civ. P. 12(b)(6) motion. Thus, it does not formally accept as true the Amended Complaint's allegations.

transaction to restructure the loan, or alternatively, sell back the loan to Treeline at a discount. (Id. at ¶ 21.) Eventually, on August 2, 2010, Treeline accepted the RAIT Defendants' offer to buy out the RAIT Defendants interest in 990 SAI at a 37.5% discount, and orally agreed on all the transaction's material terms. (Id. ¶¶ 30, 31.)

In reliance on the parties' oral agreement, Treeline obtained new financing, expended legal fees, and continued to invest money in the underlying property. (Id. ¶ 31.) But, despite the oral agreement and Treeline's reliance, the RAIT Defendants have refused to close on the agreed buy-out transaction. (Id. ¶ 32.)

Accordingly, on October 5, 2010, Treeline filed suit in New York Supreme Court, Nassau County. The Complaint sued only RAIT Atria, LLC ("RAIT Atria"). It did not name 990 SAI, RAIT Partnership, LP ("RAIT Partnership"), or RAIT General, Inc. ("RAIT General") as defendants. The Complaint alleged that, by failing to close the buy-out, RAIT Atria breached a contract, committed fraud, and engaged in negligent misrepresentation. See Docket No. 1. RAIT Atria promptly removed to this Court.

After removal, Treeline filed an Amended Complaint on November 30, 2010. In addition to RAIT Atria, the Amended Complaint named three new Defendants: RAIT Partnership, RAIT

General and 990 SAI. The Amended Complaint asserts all the claims originally pled, and adds new claims for declaratory, injunctive, and equitable relief principally against 990 SAI. Specifically, the Amended Complaint seeks to enjoin 990 SAI from making interest payments to the RAIT Defendants, declaratory relief that 990 SAI no longer needs to make such payments, and equitable relief through creating a trust on 990 SAI's future revenues.

The RAIT Defendants have moved to strike 990 SAI as a Defendant, arguing that Treeline fraudulently joined this entity to defeat diversity jurisdiction. The RAIT Defendants do not, however, dispute the addition of RAIT Partnership or RAIT General. Additionally, the RAIT Defendants have moved to dismiss.

## DISCUSSION

I. Standard of Review

Cases arising under 28 U.S.C. §1332 require complete diversity - each plaintiff's citizenship must be different from the each defendant's citzenship. Briarpatch Ltd. L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 302 (2d Cir. 2004).

A plaintiff may not defeat federal court diversity jurisdiction by improperly joining a non-diverse party as a defendant with no connection to the controversy. The fraudulent

joinder doctrine allows federal courts to disregard a non-diverse defendant if, from the pleadings, there is no possibility that the claims against that defendant could be asserted in state court. Bounds v. Pine Belt Mental Health Care Resources, 593 F.3d 209, 215 (2d Cir. 2010). If, after removal, the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may, in its discretion, deny joinder, or permit it and remand the action to state court. See, 28 U.S.C. §1447(e); McGee v. State Farm Mut. Auto. Ins. Co., 684 F. Supp. 2d 258, 261 (E.D.N.Y. 2009). Defendants asserting fraudulent joinder "bear the heavy burden of proving circumstances by clear and convincing evidence, with all factual and legal ambiguities resolved in favor of plaintiff." Bounds, 569 F.3d at 215.

In deciding whether to permit a non-diverse party's joinder, the Court: "(1) evaluate[s] whether joinder is permissible under Rule 20(a)(2) of the Federal Rules of Civil Procedure and, if so, then (2) ascertain[s] whether the balancing of certain relevant considerations weighs in favor of joinder and its necessarily attendant remand." McGee, 684 F. Supp. 2d at 262; accord Abraham Nat. Foods Corp. v. Mount Vernon Fire Ins. Co., 576 F. Supp. 2d 421, 424-25 (E.D.N.Y. 2008). Under this framework, "[a]dditional non-diverse parties need not be

indispensable to be joined." Gursky v. Northwestern Mut. Life Co., 139 F.R.D. 279, 282 (E.D.N.Y. 1991).

II. Is Joinder Permissible Under Rule 20?

Rule 20(a)(2) allows joinder of defendants when: (1) any right to relief is asserted against them jointly, severally, or in the alternative, with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (2) any question of law or fact common to all defendants will arise in the action. See FED. R. CIV. P. 20(a)(2)(A); McGee, 684 F. Supp. 2d at 262. Neither party disputes that 990 SAI is a party in interest to the litigation. 990 SAI's only members are Treeline 990 and RAIT Atria. And the disputed payments at issue are drawn from an account owned by 990 SAI's wholly-owned subsidiary. An action including all of these parties would involve at least one common question of law or fact. (Am. Compl at ¶¶ 16-17; Schor Decl. Ex. 1). Joinder, therefore, is permissible.

III. Is Joinder Fundamentally Fair?

The Court now turns to determine whether 990 SAI's joinder to this case would comport with principles of fundamental fairness. Courts in the Second Circuit analyze four-factors including: (1) whether plaintiff has unduly delayed moving to amend, and its reasons for doing so; (2) whether defendants would

6

be prejudiced by remand; (3) the likelihood of multiple litigations; and (4) the plaintiff's motivation for amending the complaint. See, e.g., Gursky, 139 F.R.D. at 282 (E.D.N.Y. 1991). The Court analyzes each factor below.

A. Delay

"Delay is measured from the date of removal." Deutchman v. Express Scripts, Inc., 07-CV-3539, 2008 U.S. Dist. LEXIS 61111, at *8 (E.D.N.Y. 2008). Here, Treeline sought to join 990 SAI just two weeks after the RAIT Defendants removed this action. This brief time period weighs in favor of permitting joinder. See McGee, 684 F. Supp. 2d at 263.

B. Prejudice

As to the second factor, neither party contends that a federal or state forum will prejudice them. (Am. Compl. ¶¶ 13-15; RAIT Mem. at 15 ("justice will prevail whether the case is heard in state or federal court")). Additionally, this action has not advanced to a point where "remanding it to state court with additional defendants will require either party to revise or abandon a litigation strategy for which resources have already been expended." Nazario, 295 F. Supp. 2d at 364 (S.D.N.Y. 2003) (citations omitted). This lack of prejudice also favors permitting joinder. See McGee, 684 F. Supp. 2d at 263.

C. <u>Likelihood of Multiple Litigations</u>

As indicated above, the first two factors are relatively straightforward. But the factor addressing the likelihood of multiple litigations is somewhat more complicated.

The RAIT Defendants contend that Treeline's claims against 990 SAI are insincere. Thus, the RAIT Defendants posit that Treeline will not file a state court action against 990 SAI. (RAIT Mem. at 12).

Treeline, in contrast, argues that if RAIT Defendants succeed in dismissing 990 SAI from this suit, they will have no choice but to commence a new action in state court against it. (Treeline Mem. in Opp. at 21).

The truth is probably somewhere in the middle. After construing all legal ambiguities in Treeline's favor, <u>Bounds</u>, 593 F.3d at 215, the Court believes that Treeline possesses legally cognizable claims against 990 SAI. Under 990 SAI's Operating Agreement, it is 990 SAI, as an entity, that makes the payments to RAIT Atria that are at issue in this litigation. (<u>See</u> Operating Agreement at §§ 8, 14; <u>see also</u> Am. Compl. ¶¶ 4, 16, 49).[2] Treeline argues that those payments should flow to it,

---

[2] The RAIT Defendants argue that Treeline, not 990 SAI, makes the payments. (RAIT Def. Br. at 8-9). And the RAIT Defendants further contend that Treeline's present allegation that 990 SAI makes the payments is "inconsistent" with its prior filings in

because it RAIT Atria agreed to sell its interest in them. (Am. Compl. ¶ 30). But 990 SAI has continued to make those payments, apparently because Treeline (in its capacity as 990 SAI's Managing Member) believes that 990 SAI cannot stop them until a court permits it to do so. Similarly, Treeline and 990 SAI differ as to whether 990 SAI needs to continue providing monthly financial reports to RAIT Atria. So a real case or controversy exists between Treeline and 990 SAI, despite Treeline's role in managing the latter.

At the same time, the Court agrees that a parallel state litigation is not terribly likely. Treeline saw no need to name 990 SAI in the original state court Complaint. See Deutchman v. Express Scripts, Inc., 07-CV-3539, 2008 U.S. Dist. LEXIS 61111, *10 (E.D.N.Y. 2008). And, because it manages 990 SAI, the two entities are--at a minimum--decidedly less adverse than most litigants. Furthermore, if Treeline's claims against

---

this litigation. (Id.) The Court sees no inconstancy. As the Court reads the Operating Agreement, Treeline, as Managing Member, performs the ministerial task of doing what is physically necessary (i.e., signing checks, approving wire transfers) to ensure that 990 SAI makes the payments to RAIT Atria. But Treeline draws the payments from an account owned by 990 SAI's wholly-owned subsidiary. See Operating Agreement §§ 8, 14. Thus, in a "plain English" sense of term, one could say that Treeline "pays" the obligations. But the payments really come from 990 SAI.

RAIT Atria prevail, Treeline will probably obtain the same substantive relief, regardless of whether it names 990 SAI.

Accordingly, the Court finds that this factor tips in favor permitting joinder, but only slightly.

   D. Motivation

Finally, the Court must consider Treeline's motivation in joining 990 SAI. The RAIT Defendants correctly cite authority holding that "a principal desire to destroy federal diversity jurisdiction is an impermissible motive." Nazario, 295 F. Supp. 2d at 364. And here, Treeline does not deny that defeating diversity motivated its choice to join 990 SAI as a Defendant, at least in part. But a movant does not need "to demonstrate that [its] sole, or even primary, reason for seeking [joinder] is to achieve a result other than the ability to control the choice of forum." Sonn v. Wal-Mart Stores, Inc., 06-CV-1816, 2006 WL 2546545, at *6 (E.D.N.Y. 2006). "[R]ather, [it is] the party opposing the joinder who must demonstrate its impropriety." Id. And, "[w]here there is no evidence that joinder would be fraudulent or improper" an "assertion [of improper motivation] standing alone, is insufficient to defeat the joinder." Soto v. Barnitt, 00-CV-3453, 2000 WL 1206603, *3 (S.D.N.Y. 2000); see also Dieng v. Smith & Nephew Dyonics, Inc., 02-CV-8201, 2003 WL

22240748, *3 (S.D.N.Y. 2003); Moncion v. Infra-Metals Corp., 01-CV-11389, 2002 WL 31834442, *3 (S.D.N.Y. 2002).

In this case, the RAIT Defendants have failed to prove that SAI 990's joiner was improper or fraudulent. Joinder was not improper because, as discussed above, it complied with FED. R. CIV. P. 20(a). And the RAIT Defendants have not come close to meeting their burden to show it was fraudulent.

To establish fraudulent joinder, the RAIT Defendants needed to "demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 461 (2d Cir. 1998). Here, the RAIT Defendants do not allege any "outright fraud," much less establish one. And, construing all legal ambiguities in Treeline's favor, Bounds, 593 F.3d at 215, a case or controversy exists between Treeline and 990 SAI concerning the payments. This is because Treeline, in its capacity as an investor, contends that its oral agreement with the RAIT Defendants is valid, thereby terminating 990 SAI's obligations to make the payments to the RAIT Defendants and provide monthly financial reports to them. On the other hand, 990 SAI (and Treeline, in

its capacity as a Managing Member with fiduciary duties) apparently believes it cannot cease its contractual obligations without all parties' consent or a court order. The RAIT Defendants identify no authority (under either Delaware or New York law) suggesting that such facts would not permit Treeline to obtain the declaratory, injunctive, and equitable relief it seeks against 990 SAI. And, consequently, the Court cannot say that "there is no possibility" for Treeline to prevail. Pampillonia, 138 F.3d at 461.

It follows that the final factor, motivation does not tip strongly against permitting joinder.

E. Balancing the Factors

After balancing the factors, the Court finds that permitting joinder is fundamentally fair. Consequently, the Court permits Treeline to amend its Complaint to name 990 SAI as a defendant and assert claims against it.

CONCLUSION

The RAIT Defendants' motion to drop 990 SAI as a party is DENIED. With 990 SAI now a party to this litigation, diversity jurisdiction no longer exists. Thus, the Court lacks the power to address the RAIT Defendants' motion to dismiss. Instead, the Court must sua sponte remand this case to the New York Supreme Court, County of Nassau. See 28 U.S.C. §1447(c).

The Clerk of the Court is directed to administratively terminate all pending motions, and mark this matter as CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:　　June  22 , 2011
　　　　　Central Islip, New York